UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OmniProphis Corp.,

                                        Plaintiff,

                                                        Case # 23-CV-6617-FPG

v.

                                                        DECISION AND ORDER

Vanteon Corp.,

                                        Defendant.

## INTRODUCTION

Plaintiff OmniProphis Corp. brings this action against Defendant Vanteon Corp., alleging breach of contract and misappropriation of trade secrets. *See* ECF No. 1. Currently before the Court is Vanteon's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. OmniProphis opposes the motion, ECF No. 16, and Vanteon has filed its reply. ECF No. 17. For the reasons that follow, Vanteon's motion is DENIED.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions

couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

## BACKGROUND

The following facts are taken from the complaint, unless otherwise noted.  In April 2018, OmniProphis and Vanteon began a business relationship to develop the "Phoenix Project"—a new, "highly confidential and proprietary Software Defined Radio ('SDR') program."  ECF No. 1 ¶¶ 2, 16.  An SDR is a "radio communication system that uses software instead of traditional hardware to process signals at pre-programmed frequencies and signal characteristics." *Id.* ¶ 17.  The aim of the Phoenix Project was to develop a new SDR that could "cover greater bandwidth of the cellular telecommunication spectrum in a single device," while also being capable of "both sending and receiving those signals." *Id.* ¶ 19.  OmniProphis intended to market this technology as a means to detect and block unauthorized cell-phone usage in prison facilities. *See id.* ¶¶ 3, 19.  Prior to the parties' venture, a "multi-channel, dual direction technology did not exist in a single SDR for this application." *Id.* ¶ 20.  OmniProphis created the concept for the new SDR and brought it to Vanteon to develop the technology. *Id.* ¶¶ 24, 30.

Over the course of their relationship, the parties executed several agreements governing their relationship and the protection of the parties' confidential information and trade secrets.[1] *See* ECF Nos. 13-2, 13-3, 13-4, 13-5.  OmniProphis alleges that, while Vanteon was "ultimately unsuccessful in developing a fully functional SDR" with the requisite capabilities, it made some progress towards the final product.  ECF No. 1 ¶ 43.  OmniProphis highlights three developments relevant to this dispute.  First, Vanteon created "block diagrams of the proposed architecture with design descriptions and rationale," including specifications of the design, assembly, and

---

[1] Those agreements need not be detailed at this juncture.

arrangement of component parts.  *Id.* ¶¶ 45-46.  Second, Vanteen developed new computer code in order to modify Vanteen's original "channelizer," which is "an algorithm that processes multiple signal channels simultaneously through software code."  *Id.* ¶¶ 50, 55.  Vanteen's original channelizer could only *receive* multiple channels, whereas the new computer code allowed the channelizer to also "simultaneously *transmit*[] multiple channels."  *Id.* ¶ 52 (emphasis added). Third, when Vanteen "encountered communication pathway and timing problems" relating to the thruput limitations of the component parts, it spent "hundreds of hours working to solve these problems."  *Id.* ¶¶ 60, 62.  Vanteen both eliminated unviable solutions to address these issues and arrived at a solution to the problems.  *Id.* ¶ 63.  OmniProphis alleges that these three developments are trade secrets, which belong to it by virtue of the parties' agreements.  *See id.* ¶¶ 47-48, 59, 63.

Ultimately, despite this progress, Vanteen "fell behind schedule and went over budget while working on Project Phoenix."  *Id.* ¶ 60.  Because Vanteen failed to deliver a completed product, OmniProphis sued Vanteen in August 2020.[2]

OmniProphis alleges that, after the litigation began, Vanteen began developing its own multi-channel, dual direction SDR.  ECF No. 1 ¶ 78.  Within several months, Vanteen had completed and began selling a finished product that it called "vProtean."  *Id.* ¶¶ 70-71.  The concept and capabilities of vProtean "closely mirror" those contemplated for Project Phoenix.  *Id.* ¶ 76. Vanteen's product is an SDR with "wideband capabilities[] that can be configured for a broad frequency range of instantaneous bandwidth."  *Id.* ¶ 73. Like Project Phoenix, vProtean is "capable of handling multiple channels of transmission and receiving."  *Id.* ¶ 74.  OmniProphis alleges that Vanteen relied on the (1) block diagram, (2) modified channelizer, and (3) research knowledge regarding thruput problems to develop vProtean.  *Id.* ¶ 84.

---

[2] That litigation remains ongoing.  *See OmniProphis Corp. v. Vanteen Corp.*, No. 20-CV-6612 (W.D.N.Y.).

OmniProphis brought this action in October 2023.  ECF No. 1.  It alleges claims for breach of contract and misappropriation of trade secrets based on Vanteon's alleged use of its trade secrets to develop vProtean.  *Id.* at 12-13.

## DISCUSSION

Vanteon contends that OmniProphis has failed to plausibly allege that Vanteon used OmniProphis's trade secrets to develop vProtean.  ECF No. 13-6 at 12-14.  The Court disagrees.

OmniProphis brings misappropriation claims under New York and federal law.[3]  ECF No. 1 ¶ 8.  "The elements for a misappropriation claim under New York law are fundamentally the same" as those under federal law.  *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020).  Among other things, a plaintiff must plead that the defendant improperly used the trade secret.  *See Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (stating that, under New York law, the plaintiff must allege "that the defendant[] used th[e] trade secret in breach of an agreement, confidential relationship or duty"); *see also id.* (same under federal law).  In this context, "use" is understood broadly to mean "*any* exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Restatement (Third) of Unfair Competition* § 40 cmt. c (emphasis added).  This includes "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret."  *Id.*; *see also Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) ("[T]he 'use' of a trade secret encompasses all the

---

[3] Vanteon reads the complaint more narrowly to raise only a state-law claim for misappropriation.  ECF No. 17 at 6 n.1.  The Court interprets the complaint to raise both state- and federal-law misappropriation claims.  *See* ECF No. 1 ¶ 8; ECF No. 16 at 12 ("[OmniProphis's] misappropriation of trade secrets case is based on both New York and federal law."); *see also Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp.,Inc.*, 68 F.4th 792, 807-08 (2d Cir. 2023) (discussing the federal "Defend Trade Secrets Act").  To the extent OmniProphis did not intend to bring a federal-law claim, it should file a notice to that effect with the Court.

ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose.").

At the pleading stage, allegations of improper "use" can "flow from circumstantial evidence alone." *Oakwood*, 999 F.3d at 910. "[C]ourts have recognized that circumstantial evidence is acceptable, indeed even expected, in trade secret misappropriation cases." *Xavian Ins. Co. v. Boeing Cap. Corp.*, No. 18-C-6222, 2019 WL 4750105, at *5 (N.D. Ill. Sept. 30, 2019). This is particularly true before discovery has occurred, since the relevant facts "are peculiarly within the opposing party's knowledge." *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-CV-8190, 2016 WL 1275659, at *5 (S.D.N.Y. Mar. 30, 2016); *see also Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 512 (S.D.N.Y. 2017) ("[I]t is well recognized [in trade-secret misappropriation cases] that misuse can rarely be proved by convincing direct evidence and that defendants' witnesses will often directly deny everything" (internal quotation marks omitted)).

Here, OmniProphis has plausibly alleged that Vanteon "used" its trade secrets. At the time Vanteon began working on the Phoenix Project, a multi-channel, dual direction SDR for this application did not exist, ECF No. 1 ¶ 20, and it would have taken "significant[,] time-consuming work" to develop that idea into a finished product. *Id.* ¶ 81. Nevertheless, Vanteon was able to develop and release vProtean "within only several months" after OmniProphis filed suit. *Id.* Vanteon's product "closely mirror[ed]" the concept and capabilities that it had assisted OmniProphis with developing as part of Project Phoenix. ECF No. 1 ¶ 75; *cf. Island Intellectual Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 n.3 (S.D.N.Y. 2020) ("[C]opying can be established by showing that a defendant had access to the alleged trade secrets and that there is a substantial similarity between the original product which embodied those trade secrets and the alleged copy created by the defendant." (internal quotation marks omitted)). Given

that Vanteon did not have any pre-existing developmental knowledge for this novel kind of SDR, ECF No. 1 ¶¶ 21-24, 78, Vanteon's "implausibly fast development of technology" reasonably supports an allegation of impermissible use.  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019).  In other words, the complaint plausibly suggests that Vanteon relied on its developmental work for Project Phoenix "to assist or accelerate research or development" for vProtean, which constitutes impermissible "use."  *Oakwood*, 999 F.3d at 909.

Vanteon's arguments for dismissal are not persuasive.  First, it asserts that the complaint supports the alternative conclusion that Vanteon relied only on "its own expertise, know-how, and existing intellectual property" to develop vProtean.  ECF No. 13-6 at 13.  Perhaps that is true, but in this procedural posture, the Court must "draw[] all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2020).  The existence of other plausible inferences—even *more* plausible inferences—is not a basis for dismissal under Rule 12(b)(6).  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 31 n.38 (2d Cir. 2019); *see also Oakwood*, 999 F.3d at 913 (observing that "a trade secret plaintiff [is not required] to allege that its trade secret information was the only source by which a defendant might develop its product").  Second, Vanteon contends that OmniProphis failed to sufficiently allege the specific ways in which Vanteon used the trade secrets to develop vProtean.  ECF No. 13-6 at 14.  Insofar as such facts would be "peculiarly within [Vanteon's] knowledge," *Viber*, 2016 WL 1275659, at *5, the absence of "direct proof of misappropriation" in the complaint is not fatal.  *Oakwood*, 999 F.3d at 912-13. The circumstantial allegations that OmniProphis has marshalled are sufficient at this stage.

Accordingly, the Court rejects the argument that OmniProphis failed to sufficiently allege Vanteon's "use" of its trade secrets.[4]  Dismissal is not warranted.

---

[4] Vanteon raises the same argument with respect to OmniProphis's claims for breach of contract.  *See* ECF No. 13-6 at 14-16.  That argument fails for the same reason.

**CONCLUSION**

For the reasons discussed above, Vanteon's motion to dismiss (ECF No. 13) is DENIED.

Vanteon must file an answer within 21 days of entry of this Order.

IT IS SO ORDERED.

Dated: July 17, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York